NOTE: Pursuant to Fed. Cir. R. 47.6, this disposition
is not citable as precedent. It is a public record.

# United States Court of Appeals for the Federal Circuit

05-3012

JULIE WILSON-ALMOWALLAD,

Petitioner,

v.

GENERAL SERVICES ADMINISTRATION,

Respondent.

--------------------------------------------------------------------------------------------------------------------

04-3240

JULIE WILSON-ALMOWALLAD,

Petitioner,

v.

GENERAL SERVICES ADMINISTRATION,

Respondent.

_____

DECIDED: April 11, 2005
_____

Before CLEVENGER, GAJARSA, and PROST, <u>Circuit Judges</u>.

PER CURIAM.

Petitioner Julie Wilson-Almowallad ("Wilson-Almowallad") seeks review of the final decision of the arbitrator upholding her removal from federal service by the General Services Administration ("the agency"). In re American Federation of Government Employees, Council 236 of GSA Locals, Union and General Services Administration, Employer, No. 05-3012 (Aug. 17, 2004) ("Wilson-Almowallad I"). In a related case, Wilson-Almowallad seeks review of another arbitrator's decision finding that the agency did not fail to provide Wilson-Almowallad with the information it relied upon in proposing her removal from federal service. In re American Federation of Government Employees, Council 236 of GSA Locals, Union and General Services Administration, Employer, No. 04-3240 (Mar. 2, 2004) ("Wilson-Almowallad II"). With respect to the first case, we agree with the agency that the arbitrator properly upheld Wilson-Almowallad's dismissal and therefore, affirm. With respect to the second case, we conclude that we lack jurisdiction over this matter and therefore dismiss. Notwithstanding this dismissal, we address Wilson-Almowallad's concerns in the second case to the extent they relate to her removal from federal service.

BACKGROUND

I

In April 2002, Wilson-Almowallad was a building manager assigned to the Minnesota and Wisconsin Service Center of the General Service Administration ("the Center"). The Center decided to contract out for a full-time technician and administrative assistant, and assigned Wilson-Almowallad the responsibility of processing and soliciting this contract. On April 9, 2002, the business used to fill these two positions, Ajasa Corporation, received an unsolicited resume from Wilson-

Almowallad's spouse, and, on the following day, the solicitation for the contract was issued with the same language as in the resume of Wilson-Almowallad's spouse. On April 11, 2002, Wilson-Almowallad's supervisor signed the contract with Ajasa Corporation, which in turn hired Wilson-Almowallad's spouse.

On May 8, 2002, the agency's Office of Inspector General ("OIG") began investigating the agency's concerns regarding a potential conflict of interest. The OIG report, issued on March 17, 2003, found, inter alia, that Wilson-Almowallad violated the Code of Federal Regulations' ethical standards by using public office for private gain and by deliberately providing misleading information during the OIG investigation, including denying any involvement in the contract. In addition, while the OIG investigation was pending, on June 13, 2002, Wilson-Almowallad's supervisors discovered that Wilson-Almowallad improperly charged expenses for a project to the wrong account, which, when confronted, Wilson-Almowallad admitted doing purposefully.

On September 15, 2003, the Center's director issued a letter of proposed removal to Wilson-Almowallad based on three charges: knowing and willful misuse of public office for private gain; providing misleading information to an OIG investigator; and knowing and willful misappropriation of Government funds. The seven-page letter included one paragraph that stated:

> A close and extensive review of the information contained within the OIG's March 17, 2003 report, along with further inquiry on my part, leads me to believe that, in fact, you knowingly and willfully misused your public office for private gain, and that you provided misleading information to an OIG investigator. Since the close of the OIG report, it has also come to my attention that you knowingly and willfully misappropriated government funds.

<u>Wilson-Almowallad II</u> at 7 (emphases added) (internal quotations omitted).

On September 19, 2003, the American Federation of Government Employees, Council 236 ("the union") advised the agency that it would represent Wilson-Almowallad in the removal decision. On October 2, 2003, the agency informed the union that no affidavits relating to the agency's investigation existed, and provided the union copies of (1) an e-mail from Wilson-Almowallad's supervisor to the Center's director dated June 13, 2003; (2) a report prepared by the agency's Regional Inspector General's Office; (3) an e-mail string between Wilson-Almowallad, her supervisor, and another employee; and (4) a redacted copy of the Center's director's letter to the Inspector General dated April 29, 2002. Thereafter, the Center's director also provided the union an unredacted version of the April 29, 2002 letter.

On November 14, 2003, the agency issued a decision sustaining all three charges and removing Wilson-Almowallad from federal service the same day.

II

The union filed two separate grievances in connection with this matter. One of those grievances challenged the removal decision, and on December 1, 2003, the union invoked arbitration pursuant to the collective bargaining agreement. On August 17, 2004, the arbitrator denied the grievance, finding that "[t]he Grievant was not denied certain information, was not denied due process, and there was no harmful error committed by the Agency" and "[t]he decision by the Agency to remove the Grievant from her position as Assistant Building Manager on November 14, 2003, did not violate government-wide regulations, GSA regulations, or the National Agreement." <u>Wilson-Almowallad I</u> at 23.

With respect to the second case, the union filed a grievance on October 6, 2003 alleging that the agency withheld information cited in the agency's proposal to remove Wilson-Almowallad. Following the agency's denial of that grievance, the union invoked arbitration and the arbitrator denied the grievance on March 2, 2004. In his decision, the arbitrator found that the National Agreement broadens federal regulations, which provide that employees are entitled to "the material which is relied on to support the reasons for action given in the notice," 5 C.F.R. § 752.404(b)(1), by providing that employees are additionally entitled to exculpatory materials. However, the arbitrator disagreed with the union that the reference to a "further inquiry" and the language "it has also come to my attention" established that there was material that was not disclosed to the union. Wilson-Almowallad II at 7-8. The arbitrator found that these phrases did not show the presence of any other documents and that the agency disclosed to the union all the information upon which it relied in proposing to remove Wilson-Almowallad from federal service. Wilson-Almowallad II at 8.

We have jurisdiction to review arbitration decisions regarding federal removal decisions under 5 U.S.C. § 7121(f).

DISCUSSION

I

This court reviews decisions by an arbitrator under the same standard of review as decisions by the Merit Systems Protection Board. It is a deferential standard, requiring the Federal Circuit to affirm the decision of the arbitrator unless it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with

law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c) (2000).

II

Wilson-Almowallad seeks review of the arbitrator's decision upholding her removal from federal service by the agency, asserting that the arbitrator erred by applying the incorrect law, relying upon incorrect facts, and failing to consider whether the "harmful error" statute was violated. Although we dismiss Wilson-Almowallad II for lack of jurisdiction, see infra, we address the issues raised in that case in connection with the removal arbitration to the extent they are related and she has raised them in the appeal of Wilson-Almowallad I.

With regard to her argument that the arbitrator applied the wrong law, Wilson-Almowallad submits that 5 U.S.C. § 7513(e) should have been applied and it was not. Section 7513(e) requires that the agency maintain a record of the materials involved in an action removing an employee from federal service and furnish the materials to the arbitrator and employee. The statute identifies materials as "[c]opies of the notice of proposed action, the answer of the employee when written, a summary thereof when made orally, the notice of decision and reasons therefore, and any order effecting an action." 5 U.S.C. § 7513(e) (2000). In her reply brief, Wilson-Almowallad alternatively argues that the agency did not provide the materials until the hearing. The agency responds that Wilson-Almowallad is barred from now alleging that the agency never furnished these materials to her, because she did not make this assertion during the arbitration proceeding. The agency further argues that the record shows that Wilson-Almowallad did receive all the materials involved in the action, namely the notice of

proposed action, the answer of Wilson-Almowallad, the notice of decision and reasons therefore and the order effecting Wilson-Almowallad's removal, which were all included in the joint appendix submitted by the agency and Wilson-Almowallad together for the arbitration hearing. We note that the arbitrator found that this issue had been decided in the related arbitration hearing, Wilson-Almowallad II. Wilson-Almowallad I at 21 (noting that the earlier arbitration "renders moot this first part of the Issue [whether Wilson-Almowallad was denied the materials]"). Relying on Wilson-Almowallad II as well as testimony by the Center's director, the arbitrator found that "the Union has not been persuasive in demonstrating that any other information was considered in the Grievant's removal action beyond that already provided." Wilson-Almowallad I at 21. He also noted, "As such, the Grievant was not denied due process and there was no harmful error by the Agency." Wilson-Almowallad I at 21. We consider Wilson-Almowallad II and hold that the arbitrator's finding that the agency provided all the materials to Wilson-Almowallad was supported by substantial evidence.

Wilson-Almowallad additionally alleges that "[b]ecause the 'Harmful Error' statute was violated reinstatement was not considered." In her reply brief, Wilson-Almowallad elaborates that the arbitrator did not examine the harmful error rule, but instead relied on Wilson-Almowallad II. In his decision, the arbitrator noted that Wilson-Almowallad II rendered the issue moot where it had already found that the materials were provided to Wilson-Almowallad, and therefore, there was no error committed by the agency. Wilson-Almowallad I at 23 ("The Grievant was not denied certain information, was not denied due process, and there was no harmful error committed by the Agency."). We also consider Wilson-Almowallad's argument that 5 U.S.C. § 7701(c)(2)(A) should have

been applied in <u>Wilson-Almowallad II</u>. Section 7701(c)(2)(A) provides that an agency's adverse personnel decision should not be sustained if the employee "shows harmful error in the application of the agency's procedures in arriving at such a decision." However, as we have held that the decision finding that Wilson-Almowallad received the materials was supported by substantial evidence, we find that there was no harmful error committed by the agency.

Finally, Wilson-Almowallad argues that the arbitrator erred by relying upon incorrect facts in his decision. Specifically, Wilson-Almowallad asserts that the OIG report and testimony were unsubstantiated, that Wilson-Almowallad's supervisor knew that the account was improperly coded and choose not to correct the matter but then found that Wilson-Almowallad was at fault, and that Wilson-Almowallad did not have the position or duty within the team to be held responsible. In her reply brief, Wilson-Almowallad further argues that she was not extended the right to call on witnesses, but does not offer any further explanation on this otherwise unsubstantiated assertion. The agency responds that the OIG report and testimony corresponded to the statements of every other witness except for Wilson-Almowallad, that Wilson-Almowallad admitted to miscoding the account purposefully, and that Wilson-Almowallad knowingly and willfully used her office to secure a job for her husband and then reported otherwise to an OIG investigator. The agency argues that it is inconsequential when the supervisor discovered the miscoding or whether Wilson-Almowallad had the actual authority to sign the contract. We agree with the agency that the arbitrator did not rely on incorrect facts in its decision.

III

In <u>Wilson-Almowallad II</u>, Wilson-Almowallad seeks review of the arbitrator's decision finding that the agency did not fail to provide her with the information it relied on in proposing her removal from federal service. We note that our jurisdiction only extends to reviews of arbitration awards if the matter could have been appealed to the Merit Systems Protection Board. 5 U.S.C. § 7121(f) (2000). We therefore dismiss <u>Wilson-Almowallad II</u> for lack of jurisdiction.

CONCLUSION

The arbitrator's decision in <u>Wilson-Almowallad I</u> is affirmed. <u>Wilson-Almowallad II</u> is dismissed for lack of jurisdiction.